IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **SOTERO GARCIA CHAVEZ**, | Case No. 3:22-cv-00107-IM |
| Plaintiff, | **OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT WASHINGTON COUNTY'S MOTION TO DISMISS** |
| v. | |
| **WASHINGTON COUNTY**, | |
| Defendant. | |

Brenda M. Bradley, Legal Aid Services of Oregon, 230 N.E. Second Avenue, Suite A, Hillsboro, Oregon 97124. David R. Henretty, Joseph Suarez, and Stephen S. Walters, Oregon Law Center, 522 S.W. Fifth Avenue, Suite 812, Portland, Oregon 97204. Attorneys for Plaintiff.

Eamon P. McMahon, Washington County Counsel, 155 N. First Avenue, Suite 340, MS #24, Hillsboro, Oregon 97124. Attorney for Defendant Washington County.

**IMMERGUT, District Judge.**

Before this Court is Defendant Washington County's Motion to Dismiss Plaintiff Sotero

Garcia Chavez's First Amended Complaint. Motion to Dismiss Plaintiff's First Amended

Complaint ("MTD FAC"), ECF 70. In his First Amended Complaint, Plaintiff Sotero Garcia

Chavez brings two claims against Washington County arising out of his alleged wrongful arrest

and incarceration in October 2020. First Amended Complaint ("FAC"), ECF 66. Plaintiff's First

Claim for Relief alleges false arrest and imprisonment under Oregon law. *Id.* ¶¶ 79–86.

PAGE 1 – OPINION AND ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANT WASHINGTON COUNTY'S MOTION TO DISMISS

Plaintiff's Second Claim for Relief alleges a violation of his rights under the Fourth and Fourteenth Amendments to the United States Constitution. *Id.* ¶¶ 87–91. Defendant Washington County moves to dismiss both of Plaintiff's remaining claims for failure to state a claim.

This Court finds that Plaintiff has alleged sufficient facts to support his state-law claim for false arrest and imprisonment against Defendant Washington County. Defendant's Motion is DENIED as to that claim. As to Plaintiff's constitutional claim against Defendant Washington County, however, this Court finds that Plaintiff has failed to allege facts to support his claim. Defendant's Motion is GRANTED as to that claim, and it is DISMISSED with prejudice.

## BACKGROUND

The following factual allegations are taken primarily from Plaintiff's First Amended Complaint, ECF 66, and supplemented by information previously provided by now-dismissed defendants and to which Plaintiff stipulated, ECF 36-1, Exs. 1–4.[1]

Plaintiff is Hispanic and a resident of Washington County. FAC, ECF 66 ¶ 10. He has lived in the Portland area for 35 years. *Id.* ¶ 48.

---

[1] As explained by this Court in resolving the various motions to dismiss Plaintiff's original Complaint, ECF 51, a court may consider documents incorporated by reference in the complaint when deciding a motion to dismiss. *See United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). Then-Defendant United States asked this Court to consider certain exhibits attached to its Motion to Dismiss, ECF 36-1, including the relevant felony arrest warrant and printout relating to the warrant sent to the U.S. Marshal Defendants, *id.*, Ex. 1, and three U.S. Marshal Service Reports of Investigation related to the Marshal Defendants' investigation and arrest of Plaintiff, *id.*, Exs. 2–4. Plaintiff did not object to the consideration of these documents or to their authenticity, and stipulated on the record to consideration of those exhibits at oral argument. Because Plaintiff's Amended Complaint continues to refer to the contents of these documents, and because the warrant forms the basis of Plaintiff's claims for relief, this Court again incorporates these exhibits by reference. *See In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 986 (9th Cir. 1999) (district court did not err in considering materials outside of the pleadings on a motion to dismiss where the plaintiff alleged the contents of the documents in her complaint), *superseded by statute on other grounds as recognized in In re Quality Sys., Inc. Sec. Litig.*, 865 F.3d 1130, 1146 (9th Cir. 2017).

On October 6, 2020, the City of Escondido Police Department requested the assistance of the Southern District of California's United States Marshals Service San Diego Fugitive Task Force ("San Diego Task Force") in locating and apprehending a fugitive named "Sotero Garcia." ECF 36-1, Ex. 4 at 1; FAC, ECF 66 ¶ 13. The fugitive warrant listed the suspect's name as "Sotero Garcia," height as 5'-06," weight as 280 pounds, and date of birth as April 22, 1968. ECF 36-1, Ex. 1 at 1. The fugitive was wanted for continuous sexual abuse of a minor under the age of fourteen. FAC, ECF 66 ¶ 13.

During the investigation, the Escondido Police Department detectives told the San Diego Task Force that "Sotero Garcia" had given his family an Oregon address, and that he was potentially living in Dayton, Oregon. *See* ECF 36-1, Ex. 4 at 1. San Diego Task Force officers ran local database checks and did not find any information belonging to a "Sotero Garcia" in California. *Id.* San Diego Task Force officers then ran "Sotero Garcia" for an Oregon driver's license. *Id.* That search revealed a driver's license belonging to Plaintiff Sotero Garcia Chavez. *Id.*

Plaintiff's Oregon driver's license, which was from 2015, listed his height as 5'-05," weight as 252 pounds, date of birth as April 22, 1969, and home address in Hillsboro, Oregon. ECF 36-1, Ex. 1 at 2; FAC, ECF 66 ¶ 17. Based on the physical identifiers, the matching birth date, and the location of the address on the Oregon driver's license, a collateral lead was sent to the District of Oregon's United States Marshals Services Northwest Violent Offender Task Force ("Oregon Task Force") on October 6, 2020. FAC, ECF 66 ¶ 15; ECF 36-1, Ex. 4 at 1. The collateral lead contained information from both the fugitive warrant and Plaintiff's Oregon driver's license, which included a photograph of Plaintiff. ECF 36-1, Ex. 1 at 2.

The request sent to the Oregon Task Force stated that "Sotero Garcia" had "previous history of living in Oregon and has a Oregon DL." ECF 36-1, Ex. 2 at 1. The request was noted as "ROUTINE," had a timeline of ten working days, and asked for a response by October 20, 2020. *Id.*

Following the October 6 request from the San Diego Task Force, Deputy U.S. Marshal Christopher Tamayo conducted several open source and law enforcement database queries. ECF 36-1, Ex. 3 at 1. Noticing the discrepancy between the birth year listed for Plaintiff and the birth year listed for the suspect "Sotero Garcia," Deputy U.S. Marshal Tamayo contacted the San Diego Task Force and "positively confirmed with [California] that Plaintiff was the same individual wanted by the Escondido Police Department." *Id.*

One Oregon Task Force officer report states that the Oregon Task Force officers "began their investigation with the address provided by the victim then ultimately moved on to the [Plaintiff's driver's license] address." ECF 36-1, Ex. 4 at 1–2. Deputy U.S. Marshal Tamayo's report, however, states that he received the collateral lead from the San Diego Task Force on October 8 and conducted surveillance at Plaintiff's home address on October 9, 14, and 15. ECF 36-1, Ex. 3 at 1; FAC, ECF 66 ¶ 22. Additional information about Plaintiff and his spouse was compiled and circulated by Deputy U.S. Marshal Tamayo to the Task Force members on October 9, 2020. FAC, ECF 66 ¶ 18.

On October 14, 2020, Washington County Sheriff Deputy Kent Wimberley "completed a Washington County Sheriff's Office 'Arrest/Booking' form listing [Deputy Wimberley's] own name and Oregon Department of Public Safety Standards and Training . . . identification number as the arresting officer." *Id.* ¶ 23. On the Arrest/Booking form, Deputy Wimberley entered

Plaintiff's name and date of birth as listed on Plaintiff's Oregon DMV records, "despite this information being inconsistent with the name and date of birth on the warrant." *Id.* ¶ 25.

On the following day, October 15, at around 6:30 p.m., Task Force members arrested Plaintiff at his place of employment in Beaverton, Oregon. *Id.* ¶ 26. At the time of his arrest, both Plaintiff and his adult son, who was present, repeatedly told the officers that Plaintiff was not the person named in the warrant. *Id.* ¶ 27. They also alerted the officers to the fact that Plaintiff had never resided in California. *Id.* The officers transported Plaintiff to the Washington County Jail ("Jail"). *Id.* ¶ 28.

Booking at the Jail is initiated by a Jail Services Technician at a Jail post known as Book 1. *Id.* ¶ 29. Jail Services Technicians are generally civilian employees, not certified officers, and the Jail's "written Intake policy requires Jail Services Technicians at Book 1 to make sure that arresting officers present all documents the Jail requires to take custody" of an individual and that "certain required information is included in a custody report." *Id.* ¶¶ 30–31. When an individual is presented for booking on a warrant, the Jail "requires a copy of the warrant or a warrant confirmation; an agency custody report; and a completed Suicide Risk Assessment form." *Id.* ¶ 32. The Intake policy does not address what Jail staff should do if the name, date of birth, or other identity information provided on a custody report does not match the information in an arrest warrant being used to book that person at the Jail. *Id.* ¶ 33. Nor do Jail Services Technicians or other Jail staff receive training regarding what to do in such a situation. *Id.*

Jail Services Technician Samantha Pirnak was the Jail employee at the Book 1 post when arresting officers arrived at the Jail with Plaintiff. *Id.* ¶ 34. Pirnak was presented with the Washington County Sheriff's Office Arrest/Booking custody report form that had been completed by Deputy Wimberley. *Id.* ¶ 35. Deputy U.S. Marshal Tamayo did not have a

hardcopy of the warrant or a warrant confirmation in hand when he presented Plaintiff for booking. *Id.* ¶ 37. At approximately 6:58 p.m. on October 15, 2020, Deputy Wimberley emailed Jail Sergeant David Albin a copy of the PDF compilation containing the Oregon DMV records and other information regarding Plaintiff and his spouse and information from the California fugitive warrant. *Id.* ¶ 38. Sergeant Albin forwarded Deputy Wimberley's email and the attached PDF compilation to Pirnak. *Id.*

At 7:31 p.m. Jail Services Technician Pirnak sent a Hit Confirmation Request to the San Diego County Sheriff's Office, requesting confirmation of the California fugitive warrant. *Id.* ¶ 40. Although Pirnak had Plaintiff's DMV information, which shows his correct name and date of birth, she sent the Hit Confirmation Request using the different name and date of birth that were on the California fugitive warrant. *Id.* ¶ 41. In response to Pirnak's Hit Confirmation Request, at approximately 7:36 p.m. on October 15, 2020, the Jail received a Hit Confirmation Response stating that the "record below" for "Sotero Garcia," date of birth "19680422" was confirmed. *Id.* ¶ 42.

Approximately ten minutes later, the Jail received a Warrant Abstract showing the name and date of birth as well as the height and weight from the fugitive warrant that did not match Plaintiff. *Id.* ¶ 43. The Warrant Abstract which the Jail received additionally listed an address in Escondido, California for the actual fugitive which did not match the information on Plaintiff's Oregon address or his DMV records. *Id.* ¶ 44.

At some point during the booking process, Jail Services Technician Pirnak became concerned that Plaintiff was not the person described in the California warrant and discussed her concern with a supervising sergeant at the Jail. *Id.* ¶ 45. The supervisor replied, "If it's good enough for the Marshals, it's good enough for me," and the Jail continued to book Plaintiff. *Id.*

Before booking could be completed, Plaintiff was referred to a local medical center for clearance because of his high blood pressure. *Id.* ¶ 39. Plaintiff was eventually booked into the Jail around 10:30 or 11:00 p.m. on October 15, after being treated for hypertension. *Id.* ¶¶ 46–47. As he was being booked at the Jail, Jail Services Technician Alicia Solis, who was working a post known as Book 2, obtained information about Plaintiff, including his date of birth, photograph, fingerprints, and other biographic and identity data, that did not match the information in the warrant. *Id.* ¶ 48. In addition, Solis noted in the Jail's electronic booking record that Plaintiff had resided in the Portland area for 35 years and had been employed for 30 years, which also was inconsistent with the information in the warrant. *Id.*

Although this information was collected pursuant to the Jail's official policy, that policy does not instruct Jail staff on what to do with the information. *Id.* ¶ 49. The Jail's unofficial policy and general practice is to use this information to ascertain the true name of the individual being booked and their eligibility for release or rehabilitation programs. *Id.* No policy, official or unofficial, directs Jail staff to use the collected information to determine whether someone being booked on a warrant is the person described in the warrant, *id.* ¶¶ 50–52, and no training is provided to the Jail Services Technicians regarding how to identify whether someone booked is the person described in the warrant or on other "Fourth Amendment search and seizure issues," *id.* ¶¶ 53–54. As part of the booking process, Jail Services Technicians check the Oregon Law Enforcement Data Systems database for information about prior criminal history, but in October 2020 the Jail did not have any written policy concerning identifying and confirming that a person is the subject of a warrant when presented to the Jail for booking who had not been booked into the Jail before. *Id.* ¶ 52.

On Friday, October 16, 2020, Plaintiff was arraigned in Washington County Circuit Court on the sex abuse charges contained in the warrant. *Id.* ¶ 56. During his arraignment, he was asked if he was willing to waive extradition so he could be transported from Oregon to California. *Id.* His next court date was scheduled for October 23, 2020, and bail was set at $1,000,000. *Id.*

On Saturday, October 17, 2020, Deputy U.S. Marshal Robert Gerg sent a teletype to the Jail at approximately 11:17 a.m. *Id.* ¶¶ 57–58. The teletype stated:

> USMS SAN DIEGO PROVIDED THE WRONG INFORMATION FOR A WANTED SUBJECT. GARCIA CHAVEZ IS NOT THE SUBJECT WANTED ON A FELONY ARREST WARRANT AND WAS ARRESTED IN ERROR. THE VICTIM IN THE CASE WAS SHOWN OF PHOTO OF GARCIA CHAVEZ AND CONFIRMED HE IS NOT THE CORRECT PERSON. PLEASE RELEASE SOTERO GARCIA CHAVEZ AS SOON AS POSSIBLE.

*Id.* ¶ 58. At around 1:30 p.m., Corporal Richard "Jon" Madsen told Plaintiff that his arrest had been in error and released him from the Jail. *Id.* ¶ 60. Plaintiff had been incarcerated for a total of approximately 43.5 hours at the time of his release. *Id.* Defendant Washington County does not have a policy that expedites the release process for someone who was arrested in error. *Id.* ¶ 61.

The Washington County Sheriff's Office does not track incidents like the alleged unlawful detention and incarceration of Plaintiff and cannot confirm whether similar incidents might have happened before Plaintiff's detention at the Washington County Jail. *Id.* ¶ 72.

## LEGAL STANDARDS

A motion to dismiss for failure to state a claim may be granted only when there is no cognizable legal theory to support the claim or when the complaint lacks sufficient factual allegations to state a facially plausible claim for relief. *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010). In evaluating the sufficiency of a complaint's factual

PAGE 8 – OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT WASHINGTON COUNTY'S MOTION TO DISMISS

allegations, the court must accept as true all well-pleaded material facts alleged in the complaint and construe them in the light most favorable to the plaintiff. *See Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010). To be entitled to a presumption of truth, allegations in a complaint "may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). The court must draw all reasonable inferences from the factual allegations in favor of the plaintiff. *Newcal Indus., Inc. v. Ikon Off. Sol.*, 513 F.3d 1038, 1043 n.2 (9th Cir. 2008). The court need not, however, credit the plaintiff's legal conclusions that are couched as factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009).

A complaint must contain sufficient factual allegations to "plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Starr*, 652 F.3d at 1216. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Mashiri v. Epsten Grinnell & Howell*, 845 F.3d 984, 988 (9th Cir. 2017) (internal quotation marks and citation omitted).

**DISCUSSION**

Plaintiff brings two claims against Defendant Washington County. In Claim One, Plaintiff alleges false arrest and false imprisonment under Oregon law. FAC, ECF 66 ¶¶ 79–86. In Claim Two, Plaintiff alleges that Defendant Washington County's policies, practices, or

customs, or lack thereof, caused Plaintiff to be detained and confined at the Washington County

Jail in violation of the Constitution. *Id.* ¶¶ 87–91. For the following reasons, this Court concludes

that Plaintiff has alleged facts to state a claim of false arrest and imprisonment under Oregon

law. Plaintiff's factual allegations do not, however, state a claim for municipal liability under 42

U.S.C. § 1983.

## A.  State-Law Claim

This Court previously denied County Defendant's motion to dismiss Plaintiff's state-law

claim for failure to state a claim. *See* ECF 51 at 11–15. As this Court explained, accepting

Plaintiff's allegations as true, Plaintiff had "established a *prima facie* case for false imprisonment

under Oregon law," *id.* at 14, and Defendants did not carry their burden of proving "by a

preponderance of the evidence" not only that they "acted in good faith from [their] subjective

point of view, but also that [their] belief was reasonable from an objective standpoint.," *id.* at 12.

For purposes of the instant Motion, Plaintiff's allegations relating to this claim have not

changed, and this Court again concludes that, accepting Plaintiff's allegations as true and

resolving inferences in his favor, he has stated a prima facie claim of false imprisonment under

Oregon law. And as before, the burden shifts to Defendant, which again fails to carry its burden.

Defendant has not included any evidence to suggest that the officers reasonably believed

Plaintiff to be the person described by the warrant and that such a belief was objectively

reasonable given the circumstances. *See Pierson v. Multnomah County*, 301 Or. 48, 53 (1986).

Defendant also has not provided any evidence that the officers "exercised due diligence to

ascertain that the right person [was] being arrested." *Id.* Instead, Defendant offers arguments that

its actions did not cause Plaintiff's detention and it did not intentionally detain the wrong

individual.[2] *See* MTD FAC, ECF 70 at 5–7. As with the original Complaint, Plaintiff's Amended

Complaint pleads sufficient factual allegations to state a state-law claim of false imprisonment,

and Defendant has not satisfied its burden under Oregon law to provide evidence that the officers

acted on a reasonable, good faith belief that Plaintiff was the individual named in the warrant.

Accordingly, Defendant Washington County's Motion to Dismiss Plaintiff's Claim One

for False Arrest/Imprisonment is denied.

## B. Constitutional Claim

Previously, this Court concluded that Plaintiff stated a constitutional claim with respect to

then-Individual County Defendants Daniel Guzman-Catarina and Does 1–4, but that he failed to

state a *Monell* claim against Defendant Washington County. *See* ECF 51 at 18–22. Plaintiff was

permitted leave to amend his complaint to cure the deficiency for his *Monell* claim. In his First

Amended Complaint, Plaintiff inexplicably "dropped" the Individual County Defendants. *See*

FAC, ECF 66 ¶¶ 4, 11; *see also* Plaintiff's Response ("Pl.'s Resp."), ECF 74 at 2 n.2 ("To clarify

apparent confusion regarding who is named as a defendant in the FAC, Plaintiff's claims in the

FAC are only against Washington County and not any individuals." (citation omitted)). The only

---

[2] To be clear, under Ninth Circuit law, "an amended complaint supercedes the original complaint and renders it without legal effect," *Lacey v. Maricopa County*, 693 F.3d 896, 927 (9th Cir. 2012) (en banc), such that a defendant may challenge an amended complaint in its entirety, *see Sidebotham v. Robison*, 216 F.2d 816, 823 (9th Cir. 1954) ("[O]n filing a third amended complaint which carried over the causes of action of the second amended complaint, the appellees were free to challenge the entire new complaint."); *see also In re Sony Grand Wega KDF–E A10/A20 Series Rear Projection HDTV Television Litig.*, 758 F. Supp. 2d 1077, 1098 (S.D. Cal. 2010) (holding that defendant was free to move for dismissal of entire amended complaint, including claim that had already withstood a previous motion to dismiss). That said, to the extent Defendant Washington County is simply rehashing arguments this Court has already rejected in this case, those arguments fare little better on this occasion than they did when raised as part of County Defendants' Motion to Dismiss Plaintiff's original Complaint.

constitutional claim Plaintiff realleges is the *Monell* claim against Defendant Washington
County.

As to that claim, Plaintiff claims that "Defendant's lack of investigation, lack of proper
training for Jail staff and failure to track incidents like [Plaintiff's] unlawful detention and
incarceration constitute deliberate indifference to the constitutional rights of persons such as
[Plaintiff]." FAC, ECF 66 ¶ 73; *see also* Pl.'s Resp., ECF 74 at 17–20. As explained below, this
Court finds that Plaintiff has failed to provide factual allegations sufficient to state a *Monell*
claim.

To prevail on a claim against a municipal entity for a constitutional violation, a plaintiff
must show that an official's action that caused the plaintiff's injury was pursuant "to official
municipal policy of some nature." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). To
do so, a plaintiff must go beyond the respondeat superior theory of liability and demonstrate that
the alleged constitutional deprivation was the product of a policy or custom of the local
governmental unit. *Connick v. Thompson*, 563 U.S. 51, 60 (2011). Under this standard, a
municipal defendant can be held liable because of a failure to properly train its employees only if
the failure reflects a "conscious" choice by the government. *Bd. of the Cty. Comm'rs v. Brown*,
520 U.S. 397, 407 (1997); *City of Canton v. Harris*, 489 U.S. 378, 389 (1989); *Flores v. County
of Los Angeles*, 758 F.3d 1154, 1158 (9th Cir. 2014). In other words, the government's omission
must amount to a "policy" of deliberate indifference to constitutional rights. *Harris*, 489 U.S. at
389.

To allege a failure to train, a plaintiff must include sufficient facts to support a reasonable
inference (1) of a constitutional violation; (2) of a municipal training policy that amounts to a
deliberate indifference to constitutional rights; and (3) that the constitutional injury would not

have resulted if the municipality properly trained its employees. *Benavidez v. County of San Diego*, 993 F.3d 1134, 1153–54 (9th Cir. 2021). Such a showing depends on three elements: (1) the training program must be inadequate in relation to the tasks the particular officers must perform; (2) the officials must have been deliberately indifferent to the rights of persons with whom the officials come into contact; and (3) the inadequacy of the training must be shown to have actually caused the constitutional deprivation at issue. *Merritt v. County of Los Angeles*, 875 F.2d 765, 770 (9th Cir. 1989).

"A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick*, 563 U.S. at 61 (citation omitted). "Deliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Id.* (internal quotation marks, alterations, and citation omitted). "Satisfying this standard requires proof that the municipality had actual or constructive notice that a particular omission in their training program will cause municipal employees to violate citizens' constitutional rights." *Kirkpatrick v. County of Washoe*, 843 F.3d 784, 794 (9th Cir. 2016) (en banc) (internal quotation marks, alterations, and citation omitted). In order "to demonstrate that the municipality was on notice of a constitutionally significant gap in its training, it is ordinarily necessary for a plaintiff to demonstrate a pattern of similar constitutional violations by untrained employees." *Id.* (internal quotations marks and citation omitted).

Here, Plaintiff has not alleged any facts to establish a pattern of similar constitutional violations by untrained employees. Plaintiff claims that because the "Washington County Sheriff's Office does not track incidents like the unlawful detention and incarceration of" Plaintiff, he "cannot confirm whether similar incidents might have happened before." FAC, ECF

PAGE 13 – OPINION AND ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANT WASHINGTON COUNTY'S MOTION TO DISMISS

66 ¶ 72. Without any factual allegations to demonstrate a pattern of similar constitutional

violations, Plaintiff cannot establish that Defendant Washington County acted with deliberate

indifference toward his and others' constitutional rights. Even taking Plaintiff's allegations as

true and resolving inferences in his favor, Plaintiff cannot state a claim under *Monell* for failure

to train.

Similarly, Plaintiff has failed to allege facts sufficient to support a *Monell* claim based on

deficient policies regarding investigation and tracking of similar incidents. While *Monell* liability

based on deficiencies in a policy may not strictly require a pattern of similar violations to show

deliberate indifference, there must still be deliberate indifference. As stated above, the objective

deliberate indifference standard is met when a "plaintiff . . . establish[es] that the facts available

to [county] policymakers put them on actual or constructive notice that the particular omission is

substantially certain to result in the violation of the constitutional rights of their citizens." *Castro*

*v. County of Los Angeles*, 833 F.3d 1060, 1076 (9th Cir. 2016) (emphasis omitted) (quoting

*Harris*, 489 U.S. at 396). Plaintiff has not alleged any facts to establish that Defendant had either

actual or constructive notice that its lack of a policy would result in the constitutional violation

Plaintiff alleges. Nor has Plaintiff established that his is the "rare" case in which the

unconstitutional consequences of the alleged deficiency are "patently obvious" and the violation

of a protected right is a "highly probable consequence." *See Connick*, 563 U.S. at 63; *see also*

*Harris*, 489 U.S. at 390 n.10.

Taking Plaintiff's allegations as true and resolving inferences in his favor, Plaintiff has

nonetheless failed to allege facts sufficient to support his *Monell* claim against Defendant

Washington County for having a deficient policy or lack of a policy altogether. To be clear, this

analysis addresses only Plaintiff's *Monell* claim—it does not address the viability of Plaintiff's

constitutional claim against the individual defendants, which he has now abandoned. Defendant

Washington County's motion to dismiss Plaintiff's *Monell* claim is granted.

## CONCLUSION

For the foregoing reasons, Defendant Washington County's Motion to Dismiss, ECF 70,

is GRANTED in part and DENIED in part. Plaintiff's *Monell* claim against Defendant

Washington County is DISMISSED with prejudice for failure to state a claim. The parties are

ORDERED to propose case management deadlines for Plaintiff's remaining state-law claim for

false imprisonment within 14 days of the issuance of this Opinion and Order.

**IT IS SO ORDERED**.

DATED this 3rd day of May, 2024.

/s/ Karin J. Immergut
Karin J. Immergut
United States District Judge